AARON D. THOMPSON, RESPONDENT, v. PETER F. BRISCOE, APPELLANT.

Submitted May 29, 1931—Decided October 19, 1931.

For the appellant, *Augustus S. Dreier* (*John P. Owens,* of counsel).

For the respondent, *Benjamin Newman.*

The opinion of the court was delivered by

WELLS, J. This is a suit for commissions claimed to have been earned on the sale of three building lots from a tract of land, known as "Fairview Park," Hanover township, Morris county.

The defendant was not the owner of the tract of land in question but was the exclusive agent to sell the same for the G. C. T. Corporation, the owner, for which he was to receive a commission of thirty per cent. on the sale of lots.

Defendant had a written agreement with the G. C. T. Corporation to this effect, which was offered in evidence and tentatively admitted by the trial court and marked *Exhibit P*-1.

By the agreement entered into between plaintiff and defendant (*Exhibit P*-2), plaintiff was authorized to sell lots from this "Fairview Park" tract for defendant and was to receive a commission of twenty per cent. on the purchase price of all lots sold by him for or on defendant's behalf, and an additional commission of five per cent. on the purchase

price of all lots sold by him where defendant, who was a builder, obtained a contract for the erection and construction of a building thereon for the purchaser of said lot.

The suit is for commissions on sales of lots (1) to Hopping, (2) to Clark, and (3) to Larkin. Houses were erected upon all three of these lots by the defendant.

The defendant admits that the Hopping contract of sale was procured through the instrumentality of the plaintiff but insists that since Hopping didn't fulfill the terms of the contract, plaintiff has not earned his commission but that if and when Hopping does go through with the deal, then plaintiff will be entitled to his commission on the sale of that lot.

This, however, is not the contract between plaintiff and defendant, which provides that fifty per cent. of all cash received by defendant on account of the purchase price of any and all lots is to be paid to plaintiff on account of commissions, until the commission was paid in full.

It is admitted that the purchase price of this lot was paid in full to the G. C. T. Corporation but defendant claims that Hopping paid only $260 on the contract price of $1,200 and that he had to take over the contract and pay the balance, and that since Hopping had not been able financially to carry out the terms of the contract, the defendant is not obliged to pay a commission to plaintiff on the Hopping lot.

We do not so understand the law. All the plaintiff was bound to do to earn his commission was to bring the parties together and get them to make a binding agreement.

Having accepted Hopping as a purchaser on terms suitable to the G. C. T. Corporation, the defendant cannot escape paying plaintiff a commission by saying that Hopping was unable to conclude the bargain. *Freeman* v. *Van Wagenen,* 90 *N. J. L.* 358; *Homan* v. *Griffin,* 94 *Id.* 345; *Clark* v. *Griffin,* 95 *Id.* 508.

We conclude, therefore, that the court was fully justified in charging the jury that the Hopping contract was made as a result of the services of the plaintiff who had brought the parties together and that the sale was made, and that with

respect to the Hopping transaction the còmmission had been earned by plaintiff and was due on that sale.

This conclusion disposes adversely to defendant of his exception to the court's refusal to charge as requested by defendant that—

"If you find that a purchaser was obtained by the plaintiff, but said purchaser was unable financially to carry out the terms of the contract, then you must find the verdict in favor of the defendant."

This, of course, the court properly refused to charge.

The Clark and Larkin sales present a different situation.

It is admitted that sales were made in these cases but defendant claims he made them himself and denies that plaintiff or his agents had anything to do with bringing about the sales. The evidence was conflicting and the jury rendered a verdict for the plaintiff for commissions on the sale of these two lots as well as on the sale of the Hopping lot.

There are fifteen grounds of appeal, two of which are based upon alleged errors in the admission in evidence of exhibits; two are based on rulings of the trial court on questions propounded to witnesses; two upon erroneous charges to the jury; four upon refusals to charge and five to the effect that the verdict was contrary to the charge of the court and against the weight of the evidence.

We now deal with the points made by the counsel for the defendant.

1 and 2—The first two errors assigned as grounds of appeal are:

(1) That the trial court erroneously admitted in evidence the contract (*Exhibit P*-1) between the G. C. T. Corporation and defendant and

(2) That he permitted over objection the plaintiff to answer the question—

"Under the terms of that contract" (referring to *Exhibit P*-1) "what commission was Mr. Briscoe to get on the sale of these lots?"

The answer was thirty per cent. .commission.

The objection to *Exhibit P*-1 was that it had no bearing on the contract upon which the suit was based, and defendant claims that its admission in evidence and permitting the question to be answered constitute harmful error. He does not point out how he was harmed thereby. At the time of the offer of *Exhibit P*-1 the court asked the attorney of the plaintiff what the purpose of the offer was and upon the attorney replying that it was just to show the relationship between Mr. Briscoe and the owners of the property, the court stated that he would admit it and that if he found it had no bearing he would rule it out.

Likewise at the time he permitted the question, the court said that he would allow the question—

"Subject to ruling it out later if it is not connected up or if it is immaterial."

The record fails to show any request made at the conclusion of plaintiff's case or elsewhere by the defendant's attorney to suppress *Exhibit P*-1 or to strike out the question, and while the court might have done this of its own motion, if he had deemed it proper, yet in the absence of any motion on the part of the defendant, we question defendant's right to assign as error the failure of the court to suppress the exhibit and strike out the question and answer.

It is not necessary, however, to decide this point.

We think *Exhibit P*-1 was properly admitted in evidence.

It tended to show the relationship of defendant with the owner of the tract of land, his interest therein and his right to enter into an agreement with plaintiff for the sale thereof; in short it afforded a background to the entire transaction. All through the case the defendant's attorney asked the witnesses questions concerning this very exhibit.

If *Exhibit P*-1 was properly admitted in evidence (and we hold that it was) it is obvious that defendant could suffer no harm by the answer to the question as to what commission was paid to the defendant by the terms thereof.

The contract contained the answer to this question and its answer by the witness was mere surplusage and, if error, was harmless:

3. The third point raised by defendant is that it was error for the trial court to admit in evidence *Exhibits P*-6 and *P*-7.

*P*-6 was a receipt of the G. C. T. Corporation for the down payment of Clark on lot number 70. It was signed "G. C. T. Corporation, Callahan and Mac Cormack, salesman."

It was not signed by Clark; Callahan and MacCormack were selling agents of plaintiff for these lots.

*P*-7 was the contract between the G. C. T. Corporation and Clark for the purchase of lot number 70. It was executed on behalf of the corporation by the treasurer and attested by the plaintiff, as secretary. Clark's signature was not affixed on the dotted line evidently made for that purpose, as evidenced by a seal on the line and the word "witness" opposite. Clark's signature, however, was affixed below this line and at the bottom of the last page of the contract, and above his signature and between it and the dotted line were these words, "I transfer all my rights in this contract to the Fairview Building Corporation."

This company was owned and controlled by the defendant and used by him in his building operations.

These exhibits were not offered for the purpose of showing that Clark had bought the lot. This was conceded— the purpose was to show plaintiff's connection with the sale.

It was testified by plaintiff's agent, Callahan, that defendant had collected the down payment of $20 from Clark and given it to MacCormack, also plaintiff's agent, who in turn gave it to him and he gave it to the plaintiff; and Callahan said that at the time the $20 check was turned over to plaintiff, the defendant said to plaintiff, "one of your customers came up and looked at a lot and I am going to get $20 from him tomorrow," and defendant was asked by plaintiff if he wanted a contract and he replied that he did.

The defendant did not deny this. Just wherein the defendant is harmed by the admission of the contract (*P*-7) in evidence, we fail to see. There was nothing in the contract itself indicating through whose instrumentality the signature of Clark to the assignment at the bottom thereof was affixed,

and since the defendant admits that a contract of sale was made with Clark (but claims it was made through him and not through plaintiff), no harm was done to defendant by admitting this contract in evidence.

There was testimony by plaintiff's agent that they had talked to Clark about this sale and that Clark had paid the defendant the deposit in cash and that the defendant, recognizing Clark as the plaintiff's customer had delivered his check for this deposit to plaintiff's agent who handed it in to the company with the unsigned receipt (*P*-6).

The objection to *P*-6 was that it was a self-serving declaration.

The court admitted it on the theory that it was in the nature of a deposit slip, and we see no harmful error in the admission of the receipt in evidence.

4. The fourth point raised by the defendant is that it was error to refuse to permit the defendant to testify as to who accepted for the G. C. T. Corporation a check of defendant previously testified by defendant to have been given by him to the plaintiff, who was the secretary of the G. C. T. Corporation, in full payment for the balance due on the three lots. Defendant claims that this question was material under his first separate defense, which was that—

"Before the institution of this suit the parties hereto struck a balance between themselves and completed it accordingly."

The attorney for the defendant argued before the trial court that the testimony showed that in the previous deals the defendant and plaintiff settled everything as far as the commissions on the lots were concerned by the defendant giving to the plaintiff or the G. C. T. Corporation checks payable to the G. C. T. Corporation for the amounts due on the lots and in these checks were always included plaintiff's commissions, and that the corporation and plaintiff then settled between them for the commissions to which plaintiff was entitled on the sale of lots, and that the same practice prevailed in the present case, and that if defendant were permitted to show that plaintiff had accepted for the cor-

poration defendant's check in full settlement for the three lots, it would tend to prove that whatever commissions were due to plaintiff were included in this check, and that the payment of the check by defendant and its acceptance by plaintiff constituted a settlement in full between them for the commissions sued for.

As the trial court aptly said the check did not help in that. The check was not offered in evidence nor marked for identification. This court cannot surmise as to what it might have proved.

Had the defendant answered the question as his attorney hoped he would, namely that the plaintiff accepted the check in behalf of the corporation, no advantage could have come to the defendant. It could have added nothing to the testimony defendant had already given.

We think the trial court properly sustained the objection to the question.

It was objectionable because it called for a conclusion; and was also irrelevant and immaterial.

5 and 6. The fifth and sixth grounds for reversal are directed to the charge of the court to the jury.

It would serve no useful purpose to review these objections in detail. Suffice it to say we have examined the charge and exceptions thereto and find no error therein.

7, 8 and 9. The seventh, eighth and ninth grounds for reversal are based upon the refusal of the court to charge as requested by the defendant.

An examination of the charge as a whole shows that the requests submitted by the defendant were charged in effect, so far as they were proper, and that was all that the court was required to do.

The twelfth point that the verdict was contrary to the charge of the court is not argued on defendant's brief and therefore we assume it is abandoned.

The eleventh, thirteenth, fourteenth and fifteenth points all go to the weight of the evidence.

There was no motion made by the defendant for a nonsuit or for the direction of a verdict, and this court, therefore,

has no jurisdiction or power on appeal to review or determine the weight of evidence on which the verdict of the jury was founded.

These grounds are pertinent for a rule to show cause on an application for a new trial. *Savino* v. *Goldberg*, 92 *N. J. L.* 617; *Smith* v. *Brunswick Laundry Co.*, 93 *Id.* 436; *Chirgotis* v. *Counes*, 96 *Id.* 542.

We find no reversible error. Judgment below is affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.